Floyd W. Bybee, #012651
**FLOYD W. BYBEE, PLLC**
2473 S. Higley Road
Suite 104, #308
Gilbert, Arizona 85297
Office:  (480) 756-8822
Fax:  (480) 756-8882
floyd@bybeelaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Lonnie J. Ratliff**, an individual; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **Pinnacle Nissan, Inc.**, an Arizona corporation; and | |
| Defendants. | (Jury Trial Demanded) |

### I. <u>Introduction</u>.

Plaintiff, Lonnie J. Ratliff, by and through counsel undersigned and in good faith, alleges as follows:

1.   This is a case arising from an increasingly common practice in the retail automobile sales industry called "spot delivery" or a "yo-yo sale."  Using this practice the dealer sells an automobile to the consumer "on the spot" but intends to string the customer out like a yo-yo, and then yank them back in to force them to agree to

1    different terms.  The consumer signs all paperwork,

2    receives a certificate of ownership, temporary tags and

3    possession of the automobile.  All documents are signed

4    by the consumer and the dealer tells the consumer that

5    everything is approved.  The consumer leaves the

6    dealership believing he owns the automobile.  The sale

7    is financed by the dealer (as the creditor) on a Retail

8    Installment Sales Contract ("RISC") which the dealer

9    states will be, or has already been, assigned to a third

10   party.  As in the present case, the dealer knows that

11   the contracts cannot be sold to the third party, or that

12   the third party has refused to purchase them, and that

13   it will require the consumer to agree to more adverse

14   terms before keeping the vehicle.  Many consumers fall

15   prey to this scheme and agree to the adverse terms, but

16   a few object to this fraudulent scheme.  When the

17   consumer is then unwilling to sign a new contract on

18   more adverse terms, the dealer then springs the trap

19   that has already been created and seizes the car back.

20   The dealer is able to seize the car back because,

21   despite its representations at the time of sale, it did

22   not sign over its title interest in the vehicle.  As in

23   the present case, the dealer repossesses the automobile

24   from the consumer.  Further, neither the dealer nor the

25   finance company sends the consumer any written notice of

26   adverse action or discloses to the consumer the number

1   of times his credit report was hit while the dealer was

2   trying to prepare the more adverse terms for which the

3   consumer never even applied.  This practice violates the

4   federal Equal Credit Opportunity Act ("ECOA") and the

5   federal Fair Credit Reporting Act ("FCRA").  It also

6   violates the Arizona Motor Vehicle Code, the Arizona

7   Consumer Fraud Act, and constitutes the state law torts

8   of conversion and fraud, and is a breach of contract.

9                   II.  **Jurisdiction**.

10  2.  Jurisdiction of this Court, over this action and the

11      parties herein, arises under the ECOA, 15 U.S.C.

12      §1691e(f), FCRA, 15 U.S.C. §1681p and 28 U.S.C. §§ 1331,

13      1337, and supplemental jurisdiction over the state law

14      claims under 28 U.S.C. § 1367.  Venue lies in the

15      Phoenix Division of the District of Arizona as

16      Plaintiff's claims arose from acts of the Defendant

17      perpetrated therein.

18                   III.  **Parties**.

19  3.  Plaintiff, Lonnie J. Ratliff, is a natural person who

20      resides in Maricopa County, Arizona.

21  4.  Plaintiff is a consumer as governed by the ECOA and the

22      FCRA.

23  5.  The goods which are the subject of this litigation are

24      consumer goods, purchased for family and household

25      purposes.

26  6.  Defendant Pinnacle Nissan Inc. is an Arizona corporation

1   doing business as a retail automobile dealer.

2   7.   At all times relevant hereto Pinnacle Nissan was a

3        "creditor" as defined and governed by the ECOA (15

4        U.S.C. § 1691a(e)).

5                    **IV.   General Allegations**.

6   8.   On or about April 22, 2006, Plaintiff went to Pinnacle

7        Nissan for the purpose of purchasing a vehicle for

8        personal use.

9   9.   Plaintiff selected a used 2005 Chrysler PT Cruiser and

10       agreed to purchase it.

11  10.  At that time Plaintiff completed a credit application in

12       order to finance his purchase of the Chrysler.

13  11.  Plaintiff traded in a 1996 Nissan Altima valued by

14       Pinnacle Nissan at $1,000.00.

15  12.  In addition, Plaintiff agreed to pay an additional

16       $1,500.00 cash down payment, $200.00 of which was paid

17       at that time.

18  13.  Plaintiff's purchase of the Chrysler was memorialized in

19       a Retail Installment Sales Contract and Purchase Money

20       Security Agreement dated April 22, 2006 which both

21       Plaintiff and Pinnacle Nissan signed.

22  14.  Following application for credit by Plaintiff, Pinnacle

23       Nissan accessed and used Plaintiff's consumer credit

24       report for the purpose of determining eligibility for

25       credit.

26  15.  Pinnacle Nissan also told Plaintiff that it had assigned

1      or sold his contract to Centrix Financial.

2  16.  Pinnacle Nissan provided possession of the vehicle to

3      Plaintiff.

4  17.  Pinnacle Nissan also provided Plaintiff with temporary

5      license tags showing that the vehicle had been sold to

6      Plaintiff.

7  18.  Pinnacle Nissan subsequently told Plaintiff that his

8      credit application had been approved and that it was a

9      "done deal."

10 19.  That notice, given under the requirements of the ECOA,

11     was false and known to be false at the time it was

12     given, and therefore violated the ECOA.

13 20.  Pinnacle Nissan failed to make the required odometer

14     disclosures to Plaintiff on the certificate of title,

15     and did so with the intent to defraud.

16 21.  Pinnacle Nissan failed to process the title work for the

17     Chrysler.

18 22.  Pinnacle Nissan knew or should have known at the time of

19     the transaction that it did not intend to be bound and

20     would treat the deal as conditional or subject to a

21     demand for cash payment.

22 23.  Pinnacle Nissan knew of should have known that at the

23     time of the transaction that it did not intend to be

24     bound and did not treat the deal as having been

25     approved.

26 24.  Pinnacle told Plaintiff that it had assigned the RISC to

Centrix Financial.

25. Also, as a result of Plaintiff submitting a credit application to Pinnacle Nissan, no fewer than twenty-four (24) credit reports were accessed by various potential creditors on Plaintiff.

26. The Retail Installment Sales Contract required Plaintiff make seventy-two (72) monthly payments of $452.11 beginning on June 6, 2006.

27. Plaintiff made both his June 6, 2006 payment and his July 6, 2006 payment to Centrix Financial as instructed by Pinnacle.

28. Approximately two months after the purchase, Pinnacle Nissan contacted Plaintiff and told him that he needed to return to the dealership to sign some additional papers.

29. Accordingly, On July 6, 2006, Plaintiff returned to Pinnacle Nissan to sign papers.  When he arrived, however, and after waiting over two hours to be helped, Plaintiff was told that Centrix was no longer providing loans to automobile purchasers, and therefore it had returned the contract to Pinnacle Nissan.

30. Pinnacle told Plaintiff that it should be able to get him financing through another source, but that it needed a new credit application from him.  Pinnacle also asked Plaintiff for a co-signor on the loan.

31. Pinnacle also told Plaintiff that while they were trying

1    to get him new financing, they would take back
2    possession of the Chrysler.

3  32.  Pinnacle in fact took possession of the Chrysler from
4       Plaintiff based upon misrepresentations concerning the
5       financing of the Chrysler.

6  33.  When Plaintiff asked about his 1996 Nissan he had
7       traded, Pinnacle informed him that it had already sold
8       his car and that it could not be returned.

9  34.  Plaintiff also asked that Pinnacle return the money he
10      had put down on the purchase of the Chrysler, $1,000 for
11      the trade in and $200 cash, but Pinnacle refused to
12      refund that to him.

13 35.  Pinnacle Nissan took adverse action on Plaintiff's
14      credit application of April 22, 2006.

15 36.  Pinnacle Nissan also took adverse action on Plaintiff's
16      credit application of July 6, 2006.

17 37.  Pinnacle Nissan has never provided Plaintiff an adverse
18      action notice concerning the April 22, 2006 credit
19      application.

20 38.  Pinnacle Nissan has never provided Plaintiff an adverse
21      action notice concerning the July 6, 2006 credit
22      application.

23 39.  At the time Pinnacle Nissan took possession of the
24      Chrysler from Plaintiff, it did not have a possessory
25      interest in the Chrysler.

26 40.  As a result of Pinnacle Nissan's actions, Plaintiff has

1    been damaged.

2    ## Count I - Equal Credit Opportunity Act

3    41.  Plaintiff incorporates the preceding allegations by

4         reference.

5    42.  Following receipt of the completed application for

6         credit by Plaintiff, Pinnacle Nissan was required to

7         make a credit decision within 30 days.

8    43.  Based upon the credit application, Pinnacle Nissan

9         denied Plaintiff credit, or alternatively refused to

10        extend credit on substantially similar terms to those

11        applied for by Plaintiff, or alternatively failed to

12        render its credit decision within 30 days.

13   44.  Plaintiff did not accept any credit from Pinnacle

14        Nissan.

15   45.  Pinnacle Nissan took adverse action for the purposes of

16        the ECOA.

17   46.  Pinnacle Nissan failed to issue the adverse action

18        notice to Plaintiff which the ECOA requires of users of

19        consumer credit reports who take adverse action.

20   47.  Pinnacle Nissan was otherwise required to provide an

21        adverse action notice to Plaintiff.

22   48.  Upon information and belief, Pinnacle Nissan has no

23        policies or procedures in place to comply with the

24        ECOA's adverse action notice.

25   49.  Pinnacle Nissan failed to provide an adverse action

26        notice to Plaintiff.

50. This failure to issue an adverse action notice to Plaintiff constituted a negligent violation of the ECOA, 15 U.S.C. § 1682, by Pinnacle Nissan; alternatively, this failure to issue an adverse action notice constituted a willful violation of the ECOA, 15 U.S.C. § 1682, by Pinnacle Nissan.

51. Pinnacle Nissan has failed to maintain proper records of its credit actions in violation of the ECOA.

52. This failure to properly maintain records constituted a negligent violation of the ECOA, 15 U.S.C. § 1682, by Pinnacle Nissan; alternatively, this failure to properly maintain records constituted a willful violation of the ECOA, 15 U.S.C. § 1682, by Pinnacle Nissan.

53. Plaintiff suffered damages by these violations of the ECOA.

### Count II - Fair Credit Reporting Act

54. Plaintiff reiterates and incorporates the foregoing paragraphs as if fully set out herein.

55. The Fair Credit Reporting Act (FCRA), as codified at 15 U.S.C. § 1681 *et seq.*, imposes specific obligations upon users of consumer credit reports.

56. Defendant Pinnacle Nissan is a "person" as defined by the FCRA because it is a corporation as defined in 15 U.S.C. § 1681a(b).

57. The FCRA, 15 U.S.C. § 1681m, provides in pertinent part:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any

information contained in a consumer report, the person shall –

(1)   provide oral, written, or electronic notice of the adverse action to the consumer;

(2)   provide to the consumer orally, in writing or electronically

    (A)   the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and

(3)   provide to the consumer an oral, written, or electronic notice of the consumer's right

    (B)   to obtain . . . a free copy of a consumer report on the consumer from the consumer reporting agency . . . which notice shall include an indication of the 60-day period . . . for obtaining such a copy; and

    (C)   to dispute . . . with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

58.   An action taken or determination that is made in connection with an application that was made by, or a transaction that was initiated by, any consumer and adverse to the interests of the consumer constitutes an adverse action under the FCRA, 15 U.S.C. § 1681a(k).

59.   Defendant Pinnacle Nissan took adverse action against Plaintiff by denying him credit.

60.   Defendant Pinnacle Nissan willfully and/or negligently violated 15 U.S.C. § 1681m by failing to notify Plaintiff of the adverse action in accordance with 15 U.S.C. § 1681m.

61.  In addition to the violation of 15 U.S.C. § 1681m(a), if the credit decision was based on information other than information obtained from a credit reporting agency, Defendant Pinnacle Nissan willfully and/or negligently violated the FCRA by failing to provide the notice required by 15 U.S.C. § 1681b.

62.  As a result of the above alleged FCRA violations, Plaintiff has suffered substantial actual damages in the loss of his rights to determine the basis for credit denial, the loss of the credit itself, the presence of repeated hits on his credit reports, frustration, anger, humiliation, fear, embarrassment, and other emotional and mental anguish.

63.  Pursuant to FCRA § 1681o, any person who is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure and (ii) in the case of any successful action to enforce any liability under 15 U.S.C. § 1681o, the costs of the action together with reasonable attorneys' fees.

64.  Pursuant to 15 U.S.C. § 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the

1    failure or damages or not less than $100.00 and not more

2    than $1,000.00; (ii) such amount of punitive damages as

3    the court may allow; and (iii) in the case of any

4    successful action to enforce any liability under 15

5    U.S.C. § 1681n, the costs of the action together with

6    reasonable attorneys' fees.

7  65.  As a result of these FCRA violations, Defendant Pinnacle

8    Nissan is liable to Plaintiff for the greater of actual

9    damages suffered or statutory damages from $100 to

10   $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), or actual

11   damages pursuant to 15 U.S.C. § 1681o; Defendant

12   Pinnacle Nissan is also liable for punitive damages

13   pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys

14   fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and

15   1681o(b).

16                    **Count III - Conversion**

17 66.  Plaintiff reiterates and incorporates the foregoing

18   paragraphs as if fully set out herein.

19 67.  Pinnacle Nissan's taking possession of the Chrysler from

20   Plaintiff constitutes the tort of conversion.

21 68.  The taking of Plaintiff's down-payment constituted the

22   tort of conversion.

23 69.  The taking was without legal cause.

24 70.  The conversion was willful, intentional and/or with

25   reckless disregard for the rights and interests of

26   Plaintiff such as to justify an award of actual and

1   punitive damages.

2   **COUNT IV - Arizona Consumer Fraud Act**

3   71.   Plaintiff reiterates and incorporates the foregoing
4         paragraphs as if fully set out herein.

5   72.   On April 22, 2006, Pinnacle Nissan knew that Plaintiff
6         did not meet the qualifications for its credit offer,
7         knew that it would not be able to sell the contract, and
8         knew that it would require Plaintiff to sign a different
9         contract at more adverse terms for him to be able to
10        keep the Chrysler.

11  73.   Pinnacle Nissan concealed these facts from Plaintiff and
12        instead misrepresented that the contract would be
13        approved.

14  74.   Plaintiff reasonably relied on the misrepresentations
15        and concealments by Pinnacle Nissan and accepted the
16        contract, signed all the necessary documents, and took
17        possession of the Chrysler.

18  75.   As a result of the above alleged violations, Plaintiff
19        has suffered substantial actual damages in the loss of
20        his rights under the sale, the time, energy and expense
21        of negotiating the sale and purchasing the automobile,
22        the value of the automobile, its loss of use, costs of
23        cover, other benefits of ownership of the automobile,
24        his loss of the credit itself, frustration, anger,
25        humiliation, fear, embarrassment and other emotional and
26        mental anguish.

76. As a result of the above alleged fraud and because it shows reckless or conscious disregard of the Plaintiff's rights sufficient to justify an award of punitive damages, Pinnacle Nissan is liable to Plaintiff for his actual damages, punitive damages, and attorneys fees and costs.

## COUNT V - FRAUD

77. Plaintiff reiterates and incorporates the foregoing paragraphs as if fully set out herein.

78. On April 22, 2006, Pinnacle Nissan knew that Plaintiff did not meet the qualifications for its credit offer, knew that it would not be able to sell the contract, and knew that it would require Plaintiff to sign a different contract at more adverse terms for him to be able to keep the Chrysler.

79. Pinnacle Nissan concealed these facts from Plaintiff and instead misrepresented that the contract would be approved.

80. Plaintiff reasonably relied on the misrepresentations and concealments by Pinnacle Nissan and accepted the contract, signed all the necessary documents, and took possession of the Chrysler.

81. As a result of the above alleged violations, Plaintiff has suffered substantial actual damages in the loss of his rights under the sale, the time, energy and expense of negotiating the sale and purchasing the automobile,

1    the value of the automobile, its loss of use, costs of

2    cover, other benefits of ownership of the automobile,

3    his loss of the credit itself, frustration, anger,

4    humiliation, fear, embarrassment and other emotional and

5    mental anguish.

6  82.  As a result of the above alleged fraud and because it

7    shows reckless or conscious disregard of the Plaintiff's

8    rights sufficient to justify an award of punitive

9    damages, Pinnacle Nissan is liable to Plaintiff for his

10    actual damages, punitive damages, and attorneys fees and

11    costs.

12    **WHEREFORE** Plaintiff prays for judgment against Defendant

13  Pinnacle Nissan, for his actual, liquidated, punitive and

14  statutory damages, for equitable relief; for reasonable

15  attorneys fees and pre-judgment and post-judgment interest;

16  for the costs of litigation; and for such other and further

17  relief as the Court deems just and appropriate.

18                **DEMAND FOR JURY TRIAL**

19    Plaintiff hereby demands a jury trial on all issues so

20  triable.

21    DATED   April 3, 2007   .

22

23                    s/ Floyd W. Bybee
                         Floyd W. Bybee, #012651
                         **FLOYD W. BYBEE, PLLC**

24                         2473 S. Higley Road
                         Suite 104, #308

25                         Gilbert, Arizona 85297
                         floyd@bybeelaw.com

26                         Attorney for Plaintiff